DOCKETED _KTL 11-12-04_

IN THE CIRCUIT COURT OF THE 13th
JUDICIAL CIRCUIT IN AND FOR
HILLSBOROUGH COUNTY FLORIDA

Francis C. Lutisan and Olga Lutisan
Plaintiffs,

v.

GMAC Mortgage Corporation
dba Ditech.com,

Defendant.

**04 - 8812**

Civil No.: _____

Florida Bar No. 17388

DIVISION K

## COMPLAINT

Francis C. Lutisan and Olga Lutizan (collectively referred to as "Lutisan"), Plaintiffs in this action complain as follows against GMAC Mortgage Corporation dba ditech.com ("ditech"):

### JURISDICTION and VENUE

1. This action is for damages and relief in excess of $15,000, exclusive of interest, costs and attorneys fees and as such is within the jurisdiction of this court

2. At all times material to this action, Plaintiffs Francis C. Lutisan and Olga Lutizan, are individuals over the age of majority and *sui juris*, and are residents of Hillsborough County, Florida.

3. At all times material to this action, Defendant, GMAC Mortgage Corporation, was a corporation registered to do business in the State of Florida.


DEFENDANT'S EXHIBIT "A"

1

## INTRODUCTION

4. The defendant, ditech is a large, sophisticated lender that solicits clients for second mortgage loans through a massive television campaign and through the use of an internet web site. Ditech advertises that it allows the public to deal directly with the lender and avoid the middleman, implying that it will cost the borrower less than a traditional loan through a bank. The web site also claims: "Competitive Rates Our convenient and speedy process enables us to offer some of the lowest rates in the business for all types of home loans. We challenge you to find lower rates and fees from any other lender out there!". See www.ditech.com/about/why_ditech.jsp. As set forth more fully below, ditech regularly and systematically charges high fees and rates in connection with its second mortgage loans.

5. Unlike traditional loans that are closed by a closing attorney, Ditech's practice is to have the documents delivered by overnight mail or a notary or "document signer" deliver the documents to the customer at the customer's home. As stated on its web site: "In some states, for a refinance or second mortgage, ditech.com will send a document signer to your home or another place that you designate so you can sign all your loan documents." See www.ditech.com/questions/loanapplication.jsp#5. The Notary does not have the ability or knowledge to answer any questions regarding the loan. The signer is merely instructed where to obtain signatures, nothing more. This deceptive scheme violates the consumer protection laws enacted by Congress and the entire spirit of the "Truth in Lending" laws designed to provide consumers with easily understood and disclosed information regarding the true cost of credit.

6. This is an action pursuant to the Truth in Lending Act ("TILA"), codified at 15 U.S.C. Sec 1601 et. seq. TILA was enacted by Congress in 1968 as Title I of the Consumer Protection Act. TILA is a remedial statute that is to be construed liberally. *Ellis v. GMAC*, 160 F.3d 703, 707 (11th Cir. 1998).

7. The Federal Reserve Board adopted Regulation Z shortly after enactment of the 1968 Act. Regulation Z can be found at 12 CFR 226.1 et seq. The purpose of TILA and Regulation Z is to promote the informed use of credit and level the playing field between competing creditors.

8. The law is designed to protect consumers in credit transactions by requiring the clear disclosure of the key terms and costs of the lending transaction. The goal of TILA is to enable the consumer to understand what their actual costs of borrowing will be on a given transaction.

9. TILA intends to provide consumers with an informed understanding of the cost of credit by forcing lenders to make certain disclosures.

10. Additionally, TILA provides for material disclosures under 15 U.S.C. Sec. 1601 (u), which includes "the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number of and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and the disclosures required by [15 U.S.C. Sec. 1639 (a).]".

11. Additionally, when a consumer is using their home as collateral for a loan. The TILA provides the consumer with the right to cancel non-purchase money loans that include liens on their homes. See 15 U.S.C. Sec. 1635 (a).

12. The right to cancel may be exercised until midnight of the third business day after the loan is consummated. This right may be extended up to three years if the consumer borrower is not provided accurate material disclosures. See 15 U.S.C. Sec. 1635 (f).

13. In 1994, Congress added to the TILA by enacting the Home Ownership Equity Protection Act, 15 U.S.C. § 1639, ("HOEPA"). HOEPA was enacted by Congress to curb predatory lending.

14. Congress found that several high-rate lenders were using non-purchase money mortgages to take advantage of unsophisticated and low income homeowners in a "predatory" fashion. See S. Rep. 103-169, 1994 U.S.C.C.A.N. 1881, 1907.

15. HOEPA provides additional protections for consumers whose loan falls within the definition of a "High Cost Mortgage". A loan is considered a "high cost mortgage" and triggers the HOEPA requirements if one of two tests is met. The first test is whether the consumer was charged more than 8% of the "total loan amount" in points and fees. In setting the 8% bright line test Congress found that the 8% level for points and fees was well above the industry average. The 8% trigger was to "prevent unscrupulous creditors from using grossly inflated fees and charges to take advantage of unwitting consumers". S. Rep. 103-169, 1994 U.S.S.C.A.N. 1881, 1908. The second test is whether the APR exceeds the comparable treasuries rate by more than 10%.

16. At least three business days prior to closing a "high cost" loan, Lenders are required by 15 U.S.C. Sec. 1639 to provide the following written disclosures in conspicuous type size:

(a) the annual percentage rate;

(b); the amount of the monthly payment;

4

(c) that the Consumers were not required to complete the transaction merely because they received the disclosures or that they signed a loan application;

(d) that the loan would result in a mortgage against their home; and

(e) that they could lose their home, any money they have put into it, if they did not meet their obligations. The form used by ditech for the disclosures required by HOEPA fails to set out the disclosures in conspicuous type size. The form used by ditech for the disclosures required by HOEPA also erroneously and deceptively includes 2 references to the loan interest rate.

## PARTIES

17. Each plaintiff is a "consumer" as defined under TILA, 15 USC § 1602(h).

18. Defendant, ditech, is a mortgage company and a "creditor" as defined under TILA, 15 USC § 1602(f).

19. Ditech has made more than five loans secured by real property in the each of the years 1999, 2000, and 2001.

## COUNT I

### VIOLATION OF TRUTH IN LENDING
### BY PLAINTIFFS LUTISAN

20. The Lutisan incorporate by reference the facts set forth in paragraphs 1-19.

21. Lutisan entered into a loan that was secured by their principal dwelling.

22. Lutisan were charged at least $1,540 in up front fees for a $15,400 loan. Lutisan did not receive a Truth in Lending Disclosure and Settlement Statement in violation of the TILA.

23. Each were entitled to receive 2 copies of their notice of right to cancel the transaction.

24. The notice was required to set forth the date the right to cancel period expires pursuant to 12 CFR Sec. 226.23 (b)(1)(v).

25. Lutisan did not receive any notice of right to cancel. Lutisan were not given the proper notice of the right to cancel in violation of the TILA.

26. The date of the note was October 2, 2000.

27. Plaintiffs gave the defendant written notice of an election to cancel the transaction within three years of the loan consummation.

28. Plaintiffs' written election to cancel was given on September 5, 2003.

29. A response is required within 20 days after the creditor receives it. See 15 U.S.C. Sec. 1635 (a).

30. The defendant did not honor or respond to Lutisan's written election to cancel at any time.

31. Lutisan were forced to file this action to confirm the election to cancel.

Wherefore, Lutisan prays this court grant the following relief in Lutisan' favor and against defendant, ditech:

    a.    A judgment enforcing the election to rescind the transaction and granting Lutisan the relief they are entitled to under 15 U.S.C. § 1635;

    b.    An award of statutory damages under 15 U.S.C. Sec. 1640 for ditech's failure to timely respond to the notice of election to cancel;

    c.    An award of costs and attorneys fees;

    d.    Such other and further relief that the court deems just and proper.

## COUNT II

### VIOLATION OF HOME OWNERSHIP EQUITY PROTECTION ACT BY PLAINTIFF LUTISAN

32. The Lutisan incorporate by reference the facts set forth in paragraphs 1, 2, 4-20, 22-34.

33. Lutisan was charged an APR that exceeded the applicable treasuries rate by more than 10% and points and fees in excess of 8% of the "total loan amount".

34. Lutisan's loan falls within the definition of a "high cost" mortgage as that term is defined by 15 U.S.C. § 1602 (aa).

35. Lutisan's loan falls within the parameters of HOEPA, 15 U.S.C. § 1639.

36. HOEPA requires that certain disclosures be made in conspicuous type size to consumers at least three business days before loan consummation. See 15 U.S.C. Sec. 1639 (b)(1).

37. Lutisan was not provided the notices they were entitled to three business days in advance as required by 15 U.S.C. Sec. 1639 (b).

38. The disclosures required by 15 U.S.C. Sec. 1639 (a) are deemed material disclosures under 15 U.S.C. Sec. 1602 (u).

39. The defendant included a prepayment penalty that failed to comply with 15 U.S.C. Sec. 1639 (c)(2)(B). See Prepayment Penalty Provision attached as Exhibit 1.

40. The inclusion of terms, prohibited by HOEPA, are deemed to be failure to provide material disclosures for purposes of rescission. 15 U.S.C. Sec. 1639 (j).

41. Lutisan gave the defendant written notice of the election to cancel the transaction within three years of the loan consummation.

42. The defendant did not honor or respond to the written election to cancel at any time.

43. Lutisan was forced to file this action to confirm the election to cancel.

Wherefore, Lutisan prays this court grant the following relief in his favor and against defendant, ditech:

a. A judgment confirming the election to cancel the transaction and granting Lutisan the relief he is entitled to under 15 U.S.C. § 1635;

b. An award of statutory damages under 15 U.S.C. Sec. 1640 for ditech's failure to timely respond to the notice of election to cancel;

c. An award of costs and attorneys fees;

d. Such other and further relief that the court deems just and proper.

Respectfully submitted,

*[signature]*
Mary T. Szeluga
Florida Bar Number 17388
Legg Law Firm, LLC.
5500 Buckeystown Pike
Frederick MD 21703
Tel. (301) 620-1016
Toll Free 1-888-LEGG LAW
Fax (301) 620-1018
Email Szeluga@legglaw.com

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on all issues so triable as a matter of right.

*[signature]*
Mary T. Szeluga

# EXHIBIT 1

# MULTI-STATE 5 YEAR PREPAYMENT ADDENDUM TO NOTE

Date: September 28, 2000

Loan Number: 000652300319

Borrower: Francis C. Lutisan, Olga Lutisan

Property Address: 634 Fort Duquesne DR
Sun City Center, FL 33573

This addendum is made this Second day of October, 2000 and is incorporated into and deemed to amend and supplement the Note of the same date.

Covering the property described in the security instrument and located at:

634 Fort Duquesne DR
Sun City Center, FL 33573

Amended Provisions. In addition to the provisions and agreements made in the Note, Borrower(s) further covenants and agrees as follows:

Paragraph number 6 of the Note is amended as follows:

6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE: I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of the entire unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full or partial prepayment; however, the Note Holder may charge me for the privilege of prepayment. If more than 20% of the original principal amount of this Note is prepaid in any 12-month period within 5 years after the date of this loan, I agree to pay a prepayment charge equal to 6 months interest on the amount prepaid which is in excess of 20% of the original principal amount of this Note. If I make a Partial Prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes.

Your acknowledgment below signifies that written notice was provided to you.

_____        _____
                                       Francis C. Lutisan

_____        _____
                                       Olga Lutisan